## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD D. HOZZA, III, on behalf of himself all other persons similarly situated, | **Case No. 1:20-cv-04966** |
| Plaintiff, vs. | **Honorable Renée Marie Bumb, U.S.D.J.** |
| PRIMOHOAGIES FRANCHISING, INC. Defendant. | **Honorable Matthew J. Skahill, U.S.M.J.** |

## DECLARATION OF CHRISTIAN LEVIS IN SUPPORT OF (A) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT; AND (B) CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFF'S APPLICATION FOR AN INCENTIVE AWARD

I, Christian Levis, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a Partner with the law firm of Lowey Dannenberg, P.C. ("Lowey").

2.      I respectfully submit this Declaration in support of: (a) Plaintiff's Motion for Final Approval of the Class Action Settlement (the "Final Approval Mot."); and (b) Class Counsel's Motion for Attorneys' Fees and Expenses and Plaintiff's Application for an Incentive Award (the "Fee and Expense Application").

3.      The statements herein are true to the best of my personal knowledge, information and belief based on Lowey's books and records and information received from its attorneys and staff.

4.      I have been actively involved in prosecuting and resolving this Action on behalf of Lowey, am familiar with its proceedings, and have personal knowledge of the matters set forth herein. If called upon and sworn as a witness, I am able to competently testify thereto.

5.      By Order dated July 13, 2022 preliminarily approving the Settlement, the Court appointed Lowey as Class Counsel for the Settlement Class. ECF No. 55 at ¶ 8.

6.      Unless otherwise defined herein, all capitalized terms have the same meanings ascribed to them in the Stipulation and Agreement of Settlement between Plaintiff Edward D. Hozza, III ("Plaintiff") and Defendant PrimoHoagies

Franchising, Inc. ("PrimoHoagies" or "Defendant") (collectively the "Parties"), dated March 17, 2022 (the "Settlement Agreement" or "SA"), attached as Exhibit 1 to the March 17, 2022 Declaration of Christian Levis ("Levis Prelim. Approval Decl."), ECF No. 54-1.

## I.    INTRODUCTION

7.    The maximum value of the Settlement is $14,687,203.29 and, if approved, the Settlement would fully resolve the Action. In addition to providing relief to the Settlement Class now, the Settlement avoids the substantial risk, expense, and delay of taking this Action to trial, including the risk that the Settlement Class would recover less at trial, or nothing at all, after additional years of litigation.

8.    The Settlement was the product of arm's length negotiations among experienced counsel and involved four status and settlement conferences with the Honorable Joel Schneider, U.S.M.J. (D.N.J.) and three separate settlement conferences with the Honorable Matthew J. Skahill, U.S.M.J. (D.N.J.).

9.    Both Plaintiff and Class Counsel had a thorough understanding of the strengths and weaknesses of the claims asserted in the Action at the time they reached the Settlement.

10.    For each of these reasons, and those set forth below, Class Counsel believes that the Settlement constitutes an excellent result for the Settlement Class in light of the substantial litigation risks, and that it should be approved by the Court.

11.     As to the Fee and Expense Application, the Class Notice informed the Settlement Class that Class Counsel would apply for an award of attorneys' fees and litigation expenses of no more than $111,495.09. The Class Notice also advised the Class that the named Plaintiff may seek an Incentive Award, limited to $1,000.00.

12.     Consistent with the Class Notice, Class Counsel now moves for an award of $3,013.52 for payment of expenses they incurred in prosecuting the Action and $108,481.57 as attorneys' fees, which represents a multiplier of 0.24 on Class Counsel's lodestar in the case from case inception (April 17, 2020) through October 31, 2022. Unless otherwise stated, this Declaration focuses on the same period.

13.     Class Counsel believes the requested attorneys' fee award sought in the Fee and Expense Application is reasonable based on Class Counsel's efforts, the risk it undertook, and the results it achieved. The requested payment for litigation expenses should similarly be approved because the expenses were reasonably and necessarily incurred in the prosecution of the Action.

14.     Further, the requested Incentive Award is appropriate and reasonable in light of Plaintiff's efforts in the Action and is consistent with precedent within this Circuit and in other consumer data breach cases.

15.     This Declaration is organized as follows: (a) Section II provides an overview of Class Counsel's efforts to: (i) investigate the Data Breach, (ii) develop Plaintiff's Complaint, (iii) respond to Defendant's Pre-Motion Conference Letter

3

and prepare for the Court's Pre-Motion Conferences on June 23, August 6, and September 9, 2020, (iv) review documents exchanged and produced in the Action, and (v) engage in settlement negotiations; (b) Section III describes the settlement conferences and negotiations aided by Magistrate Judge Skahill that led to the Settlement; (c) Section IV details Plaintiff's efforts in the Action; and (d) Section V sets forth Class Counsel's total hours invested in prosecuting the Action along with the related lodestar, and the litigation expenses incurred in furtherance of the Action.

## II.   CASE DEVELOPMENT, INITIAL PLEADINGS, AND PRE-MOTION CONFERENCES

### A. Initial Case Investigation

16.    PrimoHoagies is the parent franchisor of a chain of approximately 97 casual sandwich restaurants.

17.    In addition to its stores, PrimoHoagies has an e-commerce online payment platform allowing customers to place orders for pickup or delivery from a PrimoHoagies restaurant location.

18.    On April 17, 2020, PrimoHoagies publicly announced that, on or about February 18, 2020, it had discovered that its online payment platform was compromised (the "Data Breach" or the "Incident"). PrimoHoagies also emailed potentially affected individuals, including Plaintiff, to notify them of the Data Breach (the "Incident Notice").

19.    According to the Incident Notice, PrimoHoagies conducted an investigation to identify the scope of the Data Breach, which found that malware installed on its systems by unauthorized third parties may have been used to acquire customers' Payment Card information, including names, addresses, payment card numbers, expiration dates, and security codes, from transactions made using its online payment platform between July 15, 2019 and February 18, 2020 (the "Data Breach Period").

20.    Following this news, Lowey began investigating the Data Breach by researching the factual circumstances surrounding the Data Breach as well as the potential legal claims involving PrimoHoagies. In the days following, Lowey spoke to Plaintiff who believed he was affected by the Data Breach. Throughout the course of the litigation, Lowey also spoke to other individuals who believed they were affected by the Data Breach.

**B. Pleadings Development, Pre-Motion Conferences, and Document Production, Settlement Conferences & Negotiations**

21.    On April 23, 2020, Plaintiff filed a putative class action complaint against PrimoHoagies (the "Complaint"). ECF No. 1.

22.    The Complaint alleged, among other things, that PrimoHoagies acted unlawfully by, *inter alia*, failing to safeguard and protect its customers' highly sensitive and personal information in violation of the Pennsylvania Unfair Trade

Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*; the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.*; and state common law.

23.    On May 29, 2020, PrimoHoagies filed their motion to dismiss Plaintiff's Complaint under FED. R. CIV. P. 12(b)(1) and 12(b)(6). ECF No. 5.

24.    On June 3, 2020, Plaintiff filed a letter requesting the Court to deny Defendant's motion to dismiss for Defendant's failure to follow Section I.A. of the Court's Rules and Procedures, which requires a movant first submit a letter requesting a Pre-Motion Conference prior to filing a motion to dismiss. ECF No. 6.

25.    On June 4, 2020, the Court administratively terminated Defendant's motion to dismiss and ordered Defendant to comply with the Court's Individual Rules and Procedures I.A. ECF No. 8.

26.    On June 4, 2020, PrimoHoagies filed a letter request for a Pre-Motion Conference to file a motion to dismiss. ECF No. 11.

27.    On June 11, 2020, Plaintiff filed a letter response in opposition to PrimoHoagies' arguments seeking to dismiss this Action. ECF No. 12.

28.    The Court held an initial Pre-Motion Conference on June 23, 2020 (ECF No. 16), at which it issued an order (the "June 23rd Order") directing the Parties "to engage in some informal discovery conversations," for purposes of exploring whether the Action could be settled and/or resolved. June 23, 2020 Hr'g Tr. at 13:21-22, ECF No. 17.

29.    In response to the June 23rd Order, on July 10, 2020, Plaintiff requested documents from PrimoHoagies relating to the Data Breach.

30.    The Court held a second Pre-Motion Conference on August 6, 2020. ECF No. 18.

31.    At the August 6th Pre-Motion Conference, the Court extended PrimoHoagies' deadline to file their motion to dismiss at the request of the Parties to allow for discussions regarding a potential resolution to the Action.

32.    On August 21, 2020, PrimoHoagies responded to Plaintiff's July 10th document requests and produced materials relating to the investigation of the Data Breach.[1] Class Counsel thoroughly reviewed and analyzed the documents PrimoHoagies produced as part of its production. The materials were consistent with PrimoHoagies' claims in its public statements and the Incident Notice that Defendant's online payment platform was accessed by unauthorized third parties who installed malicious code and exposed customers' Payment Card data.

33.    On August 24, 2020, PrimoHoagies requested documents from Plaintiff.

34.    A third Pre-Motion Conference took place on September 9, 2020. At this conference, the Court again afforded the Parties additional time to discuss

---

[1] All materials and documents exchanged between the Parties, including in the context of confirmatory discovery, were subject to Federal Rule of Evidence 408 and a confidentiality agreement between the Parties.

potential resolution and directed PrimoHoagies to file its motion to dismiss on or before October 9, 2020 if the Parties were unable to resolve this matter. ECF No. 19.

35.    On September 18, 2020, Plaintiff responded to PrimoHoagies' August 24th document requests. As part of this process, Plaintiff, on the instructions of Class Counsel, searched his email, reviewed, and produced documents related to (i) Payment Card statements containing his transactions at PrimoHoagies, (ii) correspondence with Payment Card issuer concerning an attempted fraudulent charge that he suffered, and (iii) correspondence with Payment Card issuer concerning reissuing his credit card. Class Counsel subsequently reviewed the documents in Plaintiff's possession before batching and producing them to PrimoHoagies.

36.    The Parties continued to engage in arm's length settlement negotiations through the end of 2020 and throughout 2021.

37.    As settlement negotiations between the Parties remained ongoing, on October 8, 2020, PrimoHoagies filed a request to move the time to respond to the Complaint to November 9, 2020, which the Court subsequently granted. ECF Nos. 20-21. Subsequent requests for extension for PrimoHoagies to file its motion to dismiss were made on November 6, 2020 (ECF No. 26) and December 7, 2020 (ECF No. 29), which the Court granted. ECF Nos. 27, 30.

38.    During this time, Plaintiff and PrimoHoagies participated in multiple status and settlement conferences with the Honorable Joel Schneider, U.S. Magistrate Judge (D.N.J.) on October 14, November 2, November 23, and December 21, 2020. ECF Nos. 23, 25, 30. The status and settlement conferences did not result in an agreement.

39.    In January 2021, Magistrate Judge Schneider retired, and the Parties continued settlement negotiations on their own for several weeks. These negotiations were difficult and resulted in the Parties reaching an impasse on certain issues.

## III.    SETTLEMENT CONFERENCES & NEGOTIATIONS

40.    On March 15, 2021, the Honorable Matthew J. Skahill, U.S. Magistrate Judge (D.N.J.) was assigned to the case, and the Parties revisited the potential resolution of the case with Magistrate Judge Skahill on April 6, 2021. ECF No. 34. In connection with these negotiations, the Parties agreed to submit confidential settlement memoranda to Magistrate Judge Skahill in preparation for a May 7, 2021 settlement conference. *Id.* The Parties' confidential settlement memoranda and exhibits discussed each Party's views on the case, including liability and damages, along with any other issues they viewed as necessary in reaching a settlement.

41.    The Parties made significant progress in their first meeting with Magistrate Judge Skahill on May 7, 2021. However, as several issues remained outstanding, the Parties agreed to reconvene later to continue negotiations.

Accordingly, two additional settlement conferences were held on June 23, 2021 and August 5, 2021. ECF Nos. 35, 37. Prior to each conference, the Parties submitted confidential settlement memoranda focusing on the issues for discussion at each conference. *Id.* The settlement discussions before and during the subsequent settlement conferences continued to be productive, and during the final settlement conference on August 5, 2021, the Parties' discussions with Magistrate Judge Skahill culminated in a framework for a settlement in principle, subject to preparing a formal settlement agreement and obtaining approval of the Court.

42.    During the several months between the last settlement conference with Magistrate Judge Skahill on August 5, 2021 and the execution of the Settlement Agreement, the Parties negotiated the terms of the Settlement Agreement and the details of the Notice Plan, and selected the settlement administrator. The negotiations of the Settlement terms were difficult and at times contentious and took more than six months. The Parties worked through various issues and resolved disputes concerning particular terms to finalize the agreement they had reached in principle with Magistrate Judge Skahill's supervision.

43.    As part of the negotiations (and as a condition of the Settlement), PrimoHoagies agreed to provide certain confirmatory discovery to Class Counsel. The confirmatory discovery provided by PrimoHoagies included financial information about PrimoHoagies, investigatory and remediation efforts that

PrimoHoagies took after the Data Breach, data regarding the approximate number of Payment Cards exposed in the Data Breach, and the number of names, addresses, and email accounts to which the Payment Cards were linked. This information was necessary to substantiate the size of the Settlement Class, assess the adequacy of the relief offered by PrimoHoagies, evaluate PrimoHoagies' representations concerning its financial condition, and to ultimately determine whether the proposed Settlement was fair, reasonable and adequate.

44.    PrimoHoagies provided this confirmatory discovery over several weeks while the Parties continued to work on the Settlement Agreement. Upon review, Class Counsel determined that the information was consistent with the information that had been publicly revealed, reflected in discovery, and/or proffered by counsel during the course of the litigation and settlement negotiations. Based on this information and their experience, Class Counsel determined that the Settlement is fair, reasonable and adequate, and recommended that Plaintiff enter into the agreement.

45.    After months of negotiations regarding the Settlement terms and the confirmatory discovery, the Parties executed the Settlement Agreement on March 17, 2022. ECF No. 54-1.

46.    The Settlement provides that eligible Settlement Class Members that file a timely and valid Claim Form may receive: (1) one year of credit monitoring

through Identity Theft Guard Solutions, Inc. ("IDX") valued at $119.40; (2) up to $120.00 for certain out-of-pocket cost reimbursements; and (3) $7.50 for lost time and effort incurred as a result of a fraudulent charge. Every Class Member is eligible for all three forms of Settlement Relief to the extent they qualify, and such relief is not capped by the Settlement. As a result, if all of the 58,718 Class Members seek and are qualified to receive the maximum value of all three forms of Settlement Relief, the total value of the Settlement Relief would be $14,497,474.20 (58,718 x [$119.40 + $7.50 + $120.00]).

47.    These packages of benefits are reasonable relative to the risks involved and the Action and the expected defenses raised by PrimoHoagies regarding standing, damages, causation, and class certification, among other things.

48.    PrimoHoagies also agreed to pay for Class Notice and Settlement Administration Costs as part of the Settlement. After issuing a Request for Proposal from settlement administrators, the Parties selected Angeion Group ("Angeion"). Class Counsel worked closely with Angeion and PrimoHoagies' counsel to develop the Notice Plan. The estimated cost of providing notice and administering the Settlement is $77,234.00

49.    The negotiated $111,495.09 attorneys' fees and expenses and $1,000.00 Incentive Award amounts were arrived at with the assistance of Magistrate Judge Skahill, during the last of three settlement conferences. These

conditions were discussed and agreed to only after the Parties reached agreement on all other material terms of the Settlement. The Fee and Expense Application will not reduce any settlement benefits available to the Class.

50.     The total value of the Settlement, when considering the Settlement Relief, Class Notice and Settlement Administration Costs, attorneys' fees and expenses, and the Incentive Award, is $14,687,203.29.

51.     Plaintiff and Class Counsel were well-informed regarding the strengths and weaknesses of Plaintiff's claims before reaching the Settlement. Class Counsel are experienced in prosecuting class action cases, including those involving data breach and consumer privacy claims. *See* Exhibit 8 to the Levis Prelim. Approval Decl., ECF No. 54-8. Prior to executing the Settlement, Plaintiff also had the benefit of the arguments contained in PrimoHoagies' motion to dismiss, pre-motion letter, and public disclosures, documents and information exchanged, post-settlement confirmatory discovery, and additional discussion during settlement negotiations. This further supplemented the information Class Counsel's developed from their own investigation and analysis.

52.     Negotiations leading to the Settlement were entirely non-collusive and strictly conducted at arm's length. Class Counsel was involved in all aspects of the settlement negotiations on behalf of Plaintiff and was well informed about the legal risks, factual uncertainties, potential damages, and other aspects of the strengths and

weaknesses of the claims against PrimoHoagies. Class Counsel also dealt with skilled and experienced defense counsel at PrimoHoagies, of which the lead attorney is a Certified Information Privacy Professional (CIPP/US), who routinely advises clients in connection with cyber and data security incidents as well as compliance with state and federal breach notification, data security, and privacy laws. Defense counsel frequently represents entities in connection with litigation arising out of data security and privacy events, including data breach class actions.

53.     The Settlement involves a structure and terms that are common in class action settlements, including data breach cases, and provides PrimoHoagies with a qualified right to terminate the Settlement in the event that the number of Settlement Class Members who timely exercise their right to request exclusion from the Settlement Class exceeds a certain percentage. Such a provision is common in large class action cases.

54.     Class Counsel has strong reason to believe, based on confirmatory discovery about the scope of the Data Breach provided during the course of the litigation and settlement negotiations and confirmation from the Settlement Administrator, that there are approximately 58,718 Class Members that fall within the Settlement Class definition.

55.     On March 18, 2022, Plaintiff filed a Motion for Preliminary Approval of the Proposed Class Action Settlement (ECF No. 52), a Memorandum of Law in

14

support (ECF No. 53), the Levis Prelim. Approval Decl. with eight exhibits (ECF No. 54), including the Settlement Agreement (ECF No. 54-1), a Declaration by the Settlement Administrator regarding the proposed notice plan (ECF No. 54-2), the proposed notice documents (ECF Nos. 54-3 – 54-7), Class Counsel's resume (ECF No. 54-8), and a [Proposed] Order (ECF No. 52-1).

56.     On July 13, 2022, the Court preliminarily approved the Settlement as set forth in the Settlement Agreement, as being within the range of what may be found to be fair, reasonable, and adequate to the Settlement Class for the claims against PrimoHoagies. ECF No. 55. The Court preliminarily certified the following Settlement Class (*id.* at ¶ 4):

> All Persons in the United States whose Payment Card information was used to make an online order with PrimoHoagies during the Data Breach that PrimoHoagies made public on April 17, 2020.

57.     That same day, the Court also approved the notice plan and scheduled a Fairness Hearing for March 22, 2023, at 10:00 a.m. in Courtroom 1 of the Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Camden, NJ 08101. *Id.* at ¶¶ 10, 17.

58.     Class Notice has been issued, and as of November 7, 2022, there have been no requests for exclusion and there are no objections. A total of 478 claims have been filed so far. The objection, opt-out, and claims filing deadline is November 25, 2022. Class Counsel will update the Court with additional information about

Class Members' participation as provided for in the Preliminary Approval Order. *See* ECF No. 55.

## IV.    PLAINTIFF'S EFFORTS ON BEHALF OF THE CLASS

59.    Plaintiff protected the interests of Class Members by taking actions that resulted in a substantial benefit to the Settlement Class. Plaintiff has been in direct contact with Class Counsel throughout the case. Plaintiff's efforts included, among other things, undergoing lengthy initial and follow-up interviews by Class Counsel to gather facts; searching for, culling, and producing documents regarding his transactions with PrimoHoagies and fraudulent activity on his accounts; reviewing pleadings; monitoring the overall progress of the litigation; engaging in frequent communications with Class Counsel; attending the October 14, 2020 status conference call with Magistrate Judge Schneider; giving his input on settlement negotiations; being on-call standby for the May 7, June 23, and August 5, 2021 settlement conferences; answering questions and consulting with Class Counsel on settlement terms during the settlement conferences; and approving terms contained in the Settlement Agreement and reviewing the related motion documents.

60.    Plaintiff has been a model class representative. Plaintiff was aware of the various risks involved in this case yet commenced this Action anyway. Plaintiff undertook substantial direct and indirect risk as he agreed to bring this public action in his name, to be deposed if necessary, and to testify if there was a trial. But for

Plaintiff's efforts, and his desire and willingness to litigate this case, with the potential risk of being dismissed at the pleadings' stage, class certification, or summary judgment, the Settlement Class would have likely received nothing, as no other litigation was commenced.

## V.     CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES

61.     As Class Counsel's firm resume (*see* ECF No. 54-8) demonstrates, its attorneys are skilled and accomplished litigators in the complex litigation, class action, and data breach and data privacy litigation fields with successful track records in some of the largest class actions throughout the country.

62.     Class Counsel bore the risk of litigating and funding this Action entirely on a contingent basis. There are numerous contingency fee cases in which counsel contribute hundreds of hours of service to pursue claims on behalf of a class and advance substantial sums of money, only to receive no compensation for their work.

63.     Notwithstanding, Class Counsel devoted substantial attorney time and resources to the prosecution of the Action.

64.     Set forth below in ¶¶ 65-66 is a summary reflecting the amount of time Lowey attorneys worked on the Action from the inception of the case on April 17, 2020 through October 31, 2022, and the corresponding lodestar value of that work. Class Counsel has removed time entries for those attorneys and professional staff who worked less than five hours on the case.

65.    To assist the Court in evaluating the reasonableness of the hours billed by Class Counsel, Class Counsel has included tables that summarize the major tasks and activities of the litigation and the hours work performed by each attorney associated with those tasks and activities. The aggregate hours were spent on tasks that were necessary to the overall litigation, settlement, and administration of this case.

| Initial Case Investigation and Complaint Filing | | |
|---|---|---|
| **Summary of Major Tasks Performed**<br>**(April 17, 2020 – April 28, 2020)** | | |
| Prior to the filing of this action, Class Counsel thoroughly researched and investigated the facts and legal claims relating to the Data Breach, including speaking to Plaintiff. Incorporating Class Counsel's research, Class Counsel drafted the Complaint. After Plaintiff's review, Class Counsel filed the Complaint. Class Counsel then served the Complaint and Summons on PrimoHoagies.<br><br>The hours and lodestar billed by Class Counsel to undertake and complete this work is summarized in the table below. | | |
| **Biller (Rate)**<br>**(Position / Law School Graduation Date)** | **Hours** | **Lodestar** |
| Christian Levis ($1,015) (Partner / 2012) | 3.8 | $3,857.00 |
| Anthony M. Christina ($520) (Associate / 2016) | 13.1 | $6,812.00 |
| Amanda G. Fiorilla ($485) (Associate / 2018) | 12.5 | $6,062.50 |
| | | |
| **TOTAL** | **29.4** | **$16,731.50** |

| **Pre-Motion Conferences, Settlement Negotiation, and Discovery** |
| :--- |

**Summary of Major Tasks Performed**
**(May 7, 2020 – January 19, 2021)**

After filing the Complaint, Class Counsel engaged in letter-motion practice concerning the Court's Pre-Motion Conference Letter process and responded to PrimoHoagies' Pre-Motion Conference Letter. Class Counsel also reviewed the defenses raised in PrimoHoagies' motion to dismiss.

Class Counsel prepared for, attended, and presented at the initial Court's Pre-Motion Conference on June 23, and subsequent conferences on August 6 and September 9, 2020, during which case updates were provided and information was exchanged with the Court.

Following direction from the Court during its June 23, 2020 Pre-Motion Conference "to engage in some informal discovery conversations," for purposes of exploring whether the Action could be settled and/or resolved, Class Counsel engaged with PrimoHoagies to conduct discovery.

Class Counsel drafted discovery requests and on July 10, 2020, Class Counsel requested documents from PrimoHoagies relating to the Data Breach. On August 21, 2020, PrimoHoagies responded to Class Counsel's July 10 document requests and produced materials relating to the investigation of the Data Breach. Class Counsel thoroughly reviewed and analyzed the documents produced by PrimoHoagies. The materials were consistent with PrimoHoagies' public statements and the Incident Notice that Defendant's online payment platform was accessed by unauthorized third parties who installed malicious code and exposed customers' Payment Card data.

On August 24, 2020, PrimoHoagies served document requests on Plaintiff. As part of this process, Class Counsel communicated with Plaintiff and directed Plaintiff to search his emails and Payment Card account for relevant information. Plaintiff conducted a review of his accounts and produced documents to Class Counsel related to (i) Payment Card statements containing his transactions at PrimoHoagies, (ii) correspondence with his Payment Card issuer concerning an attempted fraudulent charge that he suffered, and (iii) correspondence with his Payment Card issuer concerning reissuing his credit card. Class Counsel subsequently reviewed the documents in Plaintiff's possession before batching and producing them to PrimoHoagies on September 18, 2020.

Class Counsel prepared for, attended, and presented at the status and settlement conferences with Magistrate Judge Schneider on October 14, November 2, November 23, and December 21, 2020, where case updates were provided, and information was exchanged with the Court. The Parties also discussed the progress of discovery and their sentiments on potential settlement.

Through the end of 2020, Class Counsel continued to engage in arm's length settlement negotiations with PrimoHoagies. As part of this process, Class Counsel researched settlements in other consumer class data breach settlements.

Throughout this stage of the litigation, Class Counsel routinely communicated with Plaintiff to provide him updates and receive his input.

The hours billed by Class Counsel to undertake and complete this work is summarized in the table below.

| Biller (Rate) (Position / Law School Graduation Date) | Hours | Lodestar |
|---|---|---|
| Christian Levis ($1,015) (Partner / 2012) | 70.1 | $71,151.50 |
| Jennifer Tembeck ($650) (Senior Associate / 2007) | 25.5 | $16,575.00 |
| Anthony M. Christina ($520) (Associate / 2016) | 72.9 | $37,908.00 |
| Amanda G. Fiorilla ($485) (Associate / 2018) | 44.13 | $21,403.05 |
| Matthew Roberts ($460) (Associate / 2019) | 5.7 | $2,622.00 |
| Radhika Gupta ($430) (Associate / 2019) | 5.3 | $2,279.00 |
| | | |
| **TOTAL** | **223.63** | **$151,938.55** |

| **Settlement Conferences & Negotiations** |
|---|
| **Summary of Major Tasks Performed** <br> **(January 20, 2021 – March 18, 2022)** <br><br> In January 2021, Magistrate Judge Schneider retired, and Class Counsel continued settlement negotiations with PrimoHoagies on their own for several weeks. Magistrate Judge Skahill was later assigned to the case. Class Counsel prepared for, attended, and presented at a pre-settlement conference with Magistrate Judge Skahill on April 6, 2021. <br><br> Afterwards, a settlement conference was held on May 7, 2021. In preparation for the settlement conference, Class Counsel researched and drafted a settlement memorandum which Class Counsel submitted to Magistrate Judge Skahill that described the strengths of their case and proposed a settlement structure similar to other data breach settlements. Class Counsel attended and participated in the May 7 settlement conference along with counsel for PrimoHoagies. While the settlement conference was productive, the parties were unable to reach an agreement. <br><br> As a result, two additional settlement conferences with Magistrate Judge Skahill were held on June 23 and August 5, 2021, which Class Counsel attended. Similar to before, Class Counsel researched and drafted settlement memoranda that outlined their position and as well as the specific issues Magistrate Judge Skahill wanted addressed. During this process Class Counsel solicited the input from Plaintiff. <br><br> Finally, at the August 5 settlement conference, with the assistance of Magistrate Judge Skahill, the Parties were able to reach an agreement in principle to settle the case on a class wide basis and also negotiated their attorneys' fees and an Incentive Award for the Plaintiff. After reaching an agreement in principle, Class Counsel notified the Court that a settlement had been reached. <br><br> Class Counsel negotiated several joint stipulated extensions with PrimoHoagies, which it filed with the Court, requesting additional time for Plaintiff to file its preliminary approval motion, while the Parties drafted and negotiated a settlement agreement, reviewed confirmatory discovery, and selected a settlement administrator through a Request for Proposal ("RFP") process. Class Counsel worked closely with Angeion, the selected administrator and counsel for PrimoHoagies to develop the Notice Plan. The Settlement Agreement was |

executed on March 17, 2022. Class Counsel also solicited the input from Plaintiff during this process. Finally, Class Counsel researched and drafted a motion for preliminary approval of the settlement, which it submitted to the Court on March 18, 2022.

The hours billed by Class Counsel to undertake and complete this work is summarized in the table below.

| Biller (Rate) (Position / Law School Graduation Date) | Hours | Lodestar |
|---|---|---|
| Sitso W. Bediako ($1,015) (Partner / 2008) | 129.1 | $131,036.50 |
| Christian Levis ($1,015) (Partner / 2012) | 22.7 | $23,040.50 |
| Scott Papp ($650) (Senior Associate / 2003) | 28.7 | $18,655.00 |
| Anthony M. Christina ($520) (Associate / 2016) | 137.4 | $71,448.00 |
| Nicole Maruzzi ($520) (Associate / 2016) | 7.0 | $3,640.00 |
| Amanda G. Fiorilla ($485) (Associate / 2018) | 20.1 | $9,748.50 |
| James Pedersen ($430) (Associate / 2019) | 11.7 | $5,031.00 |
|  |  |  |
| **TOTAL** | **356.7** | **$262,599.50** |

| **Post Settlement Work**<br>**(Notice, settlement administration, final approval and fee work)** | | |
| --- | --- | --- |
| **Summary of Major Tasks Performed**<br>**(March 19, 2022 – October 31, 2022)** | | |
| Since filing Plaintiff's preliminary approval motion, Class Counsel has worked closely with Angeion and PrimoHoagies to develop and ensure that the Notice Plan has been adequately implemented and that Notice has gone out. Angeion has provided the Parties weekly updates as to statistics on claims rates and the Notice Plan implementation. Class Counsel reviewed these reports and closely monitored the statistics. On several occasions Class Counsel engaged with counsel for PrimoHoagies and Angeion to follow-up with the claim statistics. Finally, Class Counsel began work on researching and drafting a Motion for Final Approval and the Fee and Expense Application.<br><br>The hours billed by Class Counsel to undertake and complete this work is summarized in the table below. | | |
| **Biller (Rate)**<br>**(Position / Law School**<br>**Graduation Date)** | **Hours** | **Lodestar** |
| Sitso W. Bediako ($1,015)<br>(Partner / 2008) | 9.7 | $9,845.50 |
| Christian Levis ($1,015)<br>(Partner / 2012) | 0.6 | $609.00 |
| Anthony M. Christina ($520)<br>(Associate / 2016) | 31.3 | $16,276.00 |
|  |  |  |
| **TOTAL** | **41.6** | **$26,730.50** |

66.    Lowey's total fee-compensable time for which it seeks an award of attorneys' fees is summarized below.

| Attorneys | Role[2] | Graduation Date | Rates | Hours from inception to October 31, 2022 | Lodestar from inception to October 31, 2022 |
|---|---|---|---|---|---|
| Sitso W. Bediako | P | 2008 | $1,015 | 138.8 | $140,882.00 |
| Christian Levis | P | 2012 | $1,015 | 97.2 | $98,658.00 |
| Scott Papp | SA | 2003 | $650 | 28.7 | $18,655.00 |
| Jennifer Tembeck | SA | 2007 | $650 | 25.5 | $16,575.00 |
| Anthony M. Christina | A | 2016 | $520 | 254.7 | $132,444.00 |
| Nicole Maruzzi | A | 2016 | $520 | 7.0 | $3,640.00 |
| Amanda G. Fiorilla | A | 2018 | $485 | 76.73 | $37,214.05 |
| Matthew Roberts | A | 2019 | $460 | 5.7 | $2,622.00 |
| James Pedersen | A | 2019 | $430 | 11.7 | $5,031.00 |
| Radhika Gupta | A | 2019 | $430 | 5.3 | $2,279.00 |
| | | | | | |
| **TOTAL** | | | | **651.33** | **$458,000.05** |

67.    The total time for which my firm is requesting an award of legal fees is 651.33 hours. The total lodestar value of these professional services is $458,000.05. However, per the Settlement Agreement, Class Counsel is only seeking fees of $108,481.57, which reflects a *negative* lodestar multiplier of 0.24.

68.    The above hourly rates for Lowey attorneys are the firm's current hourly rates. The hourly rates for attorneys in my firm are the same as the regular rates charged for their services in contingent fee matters and non-contingent fee matters.

---

[2] "P" refers to Partners. "SA" refers to Senior Associates. "A" refers to Associates.

69.     The firm's lodestar figures do not include charges for expense items. Class Counsel also advanced reasonable expenses in this Action.  Expense items are billed separately, and such charges are not duplicated in the firm's current billing rates. Further, expense items do not contain any general overhead costs and do not contain a surcharge over the amount paid to the corresponding vendor(s).

70.     As detailed and categorized in the below schedule, Lowey has incurred a total of $3,013.52 in expenses from inception through October 31, 2022, for which it seeks payment from PrimoHoagies as provided in the Settlement Agreement.

| Expenses | Cumulative Expenses |
|---|---|
| Computer Research | $1,470.58 |
| Photocopies – In-House | $233.00 |
| Document Production/Review | $303.47 |
| Postage/Mailing | $87.52 |
| Service of Process | $146.10 |
| Court Costs | $772.85 |
|  |  |
| **TOTAL** | **$3,013.52** |

71.     The above schedule was prepared based upon expense records reflected in the Lowey's books and records. These books and records are prepared from expense vouchers, check records, receipts and other source materials. Computer research charges include costs associated with legal research performed for this Action.

72.     The expenditure of these hours and litigation costs was reasonably necessary to effectively litigate the Action and are further evidence of Class Counsel's commitment.

## VI.     CONCLUSION

73.     For the reasons set forth above and in the accompanying memoranda of law, I respectfully submit that: (i) the terms of the Settlement are fair, reasonable, and adequate in all respects and should be approved; and (ii) the Fee and Expense Application is reasonable, supported by the facts and law, and should be granted.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 10, 2022          */s/ Christian Levis*
White Plains, New York                 Christian Levis

26